## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTION DIVISION

| | |
|---|---|
| CONNIE MITCHELL, individually and on behalf of all others similarly situated, | |
| Plaintiff, | **Civil Action No.: 2:24-cv-241-BHH** |
| vs. | **CLASS ACTION COMPLAINT** |
| FKA DISTRIBUTING CO., LLC d/b/a HoMedics | **JURY TRIAL DEMANDED** |
| Defendant. | |

### CLASS ACTION COMPLAINT

Plaintiff Connie Mitchell, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendant FKA Distributing Co., LLC d/b/a HoMedics ("HoMedics" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel and review of public documents.

### PRELIMINARY STATEMENT

1.     Defendant designs, manufactures, markets, imports, distributes, and sells personal health and wellness products, including the subject "Therapist Select Percussion Personal Massagers." Defendant executed, controlled, or orchestrated every aspect of the Product's inception, design, manufacture, importation, packaging, marketing, distribution, and eventual sale.

2.     When a manufacturer sells a product, it has a duty to ensure that the product functions properly and safely for its advertised use, free from any defects. Upon discovering a

1

defect, a manufacturer must explicitly disclose the defect and take corrective action or cease selling the product. Additionally, when a product manufacturer provides a warranty, it must stand by that warranty. The present class action lawsuit arises from Defendant's breach of these stated duties and obligations.

3.    Plaintiff brings this action on behalf of herself and all other similarly situated persons who purchased any HoMedics (a brand owned by Defendant) Therapist Select Percussion Personal Massagers ("Recalled Massagers", "Class Massagers", or "the Massagers"), with a date code ending in 20, 21, or 22.

4.    Date codes are a 4-digit number WWYY where WW is the sequential week of the year and YY is the last two digits of the manufacturing year. Only products with a YY of 20, 21 or 22 are subject to this recall.[1]



---

[1]https://www.cpsc.gov/Recalls/2024/Homedics-Recalls-Massagers-Due-to-Fire-and-Burn-Hazards?utm_medium=email&amp;utm_source=govdelivery

5.    Plaintiff brings this action to remedy various violations of law in connection with Defendant's manufacturing, marketing, advertising, selling, and warranting of the Recalled Massagers.

6.    Specifically, these Recalled Massagers have dangerously defective charging mechanisms whereby the massagers can overheat while charging, posing fire and burn hazards.[2] ("the Defect").

7.    The Defect can and has overheated as evidenced by seventeen reports received by HoMedics. [3]

8.    On January 4, 2024, Defendant recalled nearly 46,000 of the above-referenced Recalled Massagers in the United States.[4]

9.    The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including counsel's analysis of publicly available information.

## JURISDICTION AND VENUE

10.    This Court possesses subject-matter jurisdiction to adjudicate the claims set forth herein under the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest

---

[2] *Id.*
[3] *Id.*
[4] https://recall.homedics.com/24-076/

3

and costs, (2) the action is a class action, (3) there are members of the Class, including Plaintiff, who are citizens of states different from Defendant, and (4) there are more than 100 Class Members.

11.     This Court has personal jurisdiction over Defendant FKA Distributing Co. because Defendant has purposefully availed itself to this District's jurisdiction and authority, given Defendant's minimum contacts within this District through Defendant's extensive marketing, advertising, and sale of products throughout this District.

12.     Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Defendant sells and distributes its Massagers throughout the United States including this district.

**PARTIES**

**Plaintiff**

13.     Connie Mitchell is a citizen of the State of South Carolina and resides in Cottageville, South Carolina. Cottageville is located within Colleton County, South Carolina.

14.     Plaintiff purchased the Massager, with the Model Number of HHP-715 and date code 1120 from Defendant in 2020, based on the representations made by Defendant. During this time, Ms. Mitchell was unaware of the dangerous nature of the Massagers. Ms. Mitchell purchased the Massager with the reasonable assumption that the Massager was safe, correctly labelled, and fit to use for its intended purposes. Ms. Mitchell would not have purchased the Massager had she known of the dangerous and defective nature of the Massager. As a result, Ms. Mitchell suffered an injury in fact when she spent money on the massager when she would not otherwise have purchased absent Defendant's misconduct, as alleged herein. Along with the economic damages,

Defendant's misconduct has also caused Ms. Mitchell to waste her time in order to claim a credit refund, which can only be used to purchase Defendant's other products.

**Defendant**

15.    Defendant FKA Distributing Co., LLC is a Michigan corporation with its principal place of business in Commerce Township, Michigan. FKA Distributing's principal place of business is 3000 N Pontiac Trl Commerce Township, MI, 48390-2720.

16.    Defendant designs, manufactures, markets, distributes, and sells personal health and wellness products including the Recalled Massagers, nationwide. Defendant is the warrantor and distributor of the Recalled Massagers in the United States.

## FACTUAL ALLEGATIONS

17.    Defendant designs, manufactures, markets, distributes, and sells personal health and wellness products among other electronics, including the Massagers at Macy's, BJ's Wholesale Club, Lowe's, JCPenney, The Home Depot and other stores nationwide and online at HoMedics.com, Macys.com, BJs.com, Lowes.com, HomeDepot.com and Amazon.com[5]

18.    These particular Massagers were sold at such locations from September 2020 through November 2023 for about $100.[6]

19.    As a result of the dangerous and unsafe nature of the Massagers tendency to overheat, on January 4, 2024, HoMedics announced a recall of its Massagers with model number HHP-715 and YY date codes of 20, 21, and 22.

20.    Plaintiff, along with all other consumers, purchased the Massagers with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable therapeutic use.

---

[5] https://www.cpsc.gov/Recalls/2024/Homedics-Recalls-Massagers-Due-to-Fire-and-Burn-Hazards
[6] *Id.*

21.    In or around 2020, Plaintiff purchased the Massager, with a Model Number of HHP-715 and date code of 1120 from her local Walmart.

22.    Plaintiff's Massager is one of the model numbers is included within Defendant's Recall.[7]

23.    Unknown to Plaintiff and all other purchasers of the Massagers, prior to the recall, Defendant defectively and negligently designed, manufactured, produced, distributed, and sold the Massager as it failed function properly and safely. Thus, even when using the Massager as intended and instructed, Defendant put all consumers of the Massagers in danger by putting a defective product into the stream of commerce.

24.    These defects make the Massager unreasonably dangerous for its intended use by consumers.

25.    Since September 2020 and up through November 2023, Defendant has designed, manufactured, distributed, and sold the Recalled Massagers. Defendant has sold over 46,000 Recalled Massagers nationwide including another 41,000 in Canada.[8]

26.    As mentioned earlier and discussed in more detail below, the Recalled Massagers contain a design defect that causes a serious safety concern. That is, it is prone to overheating when charged, leading to serious risks of fire and burns.

27.    According to the Consumer Product Safety Commission: "The massagers can overheat while charging, posing fire and burn hazards."[9]

---

[7] *Id.*
[8] *Id.*
[9] *Id.*

28.    Since the Massagers are defective and not safe for its intended use, the Consumer Product Safety Commission directed consumers of the HoMedics Massagers to "immediately stop using the recalled massagers."[10]

29.    Defendant's active and consistent promotion of its HoMedics brand massagers, Defendant's general marketing and promotion of its overall positive reputation led Plaintiff, and other consumers, to perceive HoMedics as a quality company with a strong reputation for producing reliable and safe massagers.

30.    In addition to relying on Defendant's general reputation, which was gained through marketing and promotion, Plaintiff and all other purchasers of the Massagers chose the specific HoMedics model because they believed the Massager was a high-quality, free of defects, and safe to use.

31.    Defendant's representations regarding the quality and safety of the HoMedics Massagers were false, misleading, and material when Plaintiff, and all consumers, were deciding to purchase the Massager.

32.    Safer alternative designs were available to Defendant that could have prevented the Massager from being defective, dangerous, and unfit for its intended purpose.

33.    As a direct and proximate result of Defendant's failures, consumers of the HoMedics Massager, unknowingly, purchased a dangerous, inoperable, and worthless product.

34.    Given Defendant's representations, labeling, marketing, advertising, and sale of the Massagers, Plaintiff, and other consumers, purchased the Massagers believing it to be safe and free of defects.

---

[10] *Id.*

35.    Plaintiff, and all other consumers of the Massagers, would not have purchased the HoMedics Massagers had they known of the defective, dangerous, inoperable, and worthless nature of Defendant's Massagers.

36.    Plaintiff and Putative Class members were deprived of their benefit of the bargain and were monetarily harmed by Defendant's inoperable, unusable, nonconforming, and dangerous Product.

37.    In addition to monetary damages, Plaintiff and members of the Classes have been injured as result of needing to waste additional time required to receive a refund credit for the defective Massagers. A refund credit that is only valid for the purchase of other HoMedics products.

38.    At no point was Plaintiff informed by Defendant of any recalls or defects related to her massager by anyone affiliated with Defendant or HoMedics. Instead, she learned of the defects through social media.

## CLASS ACTION ALLEGATIONS

39.    Plaintiff brings this action on behalf of herself and as a class action on behalf of all others similarly situated, pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure. Specifically, the class and subclass are defined as follows:

**Nationwide Class:** All persons in the United States who purchased any recalled HoMedics Massager from September 2020 to November 2023.

**South Carolina Subclass:** All persons from South Carolina who purchased any recalled HoMedics Massager from September 2020 to November 2023.

40.    Together, the Nationwide Class and South Carolina Subclass will be collectively referred to as the "Class" or "Classes." Members of these Classes will be referred to as "Class Members".

41.     Excluded from each of the putative classes is any employee or contractor of Defendant and any of their respective members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; and the judicial officers, and their immediate family members, and Court staff assigned to this case. Plaintiff reserves the right to modify or amend the Class definitions, as appropriate, during the course of this litigation.

42.     The members of (i) the Nationwide Class, and (ii) the South Carolina Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant, or its affiliates and agents, and from public records.

43.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

44.     The Proposed Classes are so numerous that the joinder of all members is impracticable.

45.     This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

46.     Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant, and Plaintiff can only obtain it through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

**Typicality: Fed. R. Civ. P. 23(a)(3)**

9

47.    Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased a Massager with the same defects found in all other Massagers recalled by Defendant and all such members were similarly situated and were comparably injured through Defendant's wrongful conduct as set forth herein.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

48.    Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class that she seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class-action litigation, and she intends to prosecute this action vigorously. Plaintiff and her counsel will fairly and adequately protect the interests of the Classes.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

49.    A class action is superior to any other available means for the fair and efficient adjudication of this controversy and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other injuries suffered by Plaintiff and other members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the Classes to individually seek redress for Defendant's wrongful conduct.

50.    Even if members of the Classes could afford individual litigation, the Court system likely could not. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, comprehensive supervision by a single court, and finality of the litigation.

**Predominance and Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(3)**

51.    Common Questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

a. Whether Defendant's HoMedics Brand Massagers that Defendant designed and sold possess a material defect;

b. Whether the defect creates an unreasonable risk of overheating;

c. Whether Defendant knew or should have known that the Massagers possessed the defect at the time of sale;

d. Whether Defendant omitted to disclose the defect;

e. Whether Defendant breached express warranties relating to the Massagers;

f. Whether Defendant breached implied warranties of merchantability relating to the Massagers;

g. Whether Defendant violated the Magnusson-Moss Warranty Act;

h. Whether Plaintiff and Class Members are entitled to damages;

i. Whether Plaintiff and Class Members are entitled to replacement or repair of their defective Massagers;

h. Whether Plaintiff and Class Members are entitled to restitution of the purchase price they paid for their defective Massagers; and

j. Whether Plaintiff and Class Members are entitled to other equitable relief, including an injunction requiring that Defendant engage in a corrective notice campaign and/or a recall.

**Declaratory and Injunctive Relief: Fed. R. Civ. P. 23(b)(2)**

52.    Defendant has acted or refused to act on grounds generally applicable to Plaintiff and the other members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described herein, with respect to the members of the Classes as a whole.

11

## CAUSES OF ACTION

### COUNT I
**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and the Classes)**

53.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as if fully set forth herein.

54.     Plaintiff brings this count on behalf of herself and the Classes.

55.     Plaintiff and other Class Members formed a contract with Defendant at the time they purchased their Recalled Massagers. The terms of the contract include Defendant's promises, affirmations of fact, and express warranties.

56.     The terms of the contract include the promises and affirmations of fact that Defendant made on the Recalled Massagers' packaging and through marketing and advertising, as described above.

57.     This labeling, marketing, and advertising constitute express warranties, and they became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the Class Members, on the one hand, and Defendant, on the other.

58.     As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Recalled Massagers are safe for their intended use.

59.     Plaintiff and the Class Members performed all conditions precedent to Defendant's liability under this contract when they purchased the Recalled Massagers.

60.     Defendant breached express warranties as to the Recalled Massagers and their abilities and qualities because Defendant's Recalled Massagers contained defects rendering them

unsafe for their intended use. Thus, the Recalled Massagers do not conform to Defendant's affirmations and promises described above.

61.     Neither Plaintiff nor any of the Class Members would have purchased the Recalled Massagers had they known the true nature of the Defect.

62.     Due to Defendant's breach of warranty, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

63.     Plaintiff suffered injury through Defendant's conduct because she suffered economic loss and purchased a massager that is now worthless and unsafe.

<u>COUNT II</u>
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(On Behalf of Plaintiff and the Classes)**

64.     Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

65.     Defendant is a merchant and was at all relevant times involved in the manufacturing, distributing, warranting, and/or selling of the Recalled Massagers.

66.     The Recalled Massagers are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Recalled Massagers, as goods, were purchased.

67.     Defendant entered into agreements with consumers to sell the Recalled Massagers for Plaintiff's and Class Members' personal use.

68.     The implied warranty of merchantability included with the sale of each Class Massager means that Defendant guaranteed that the Recalled Massagers would be fit for the ordinary purposes for which massagers are used and sold and would not be otherwise injurious to

consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, on the one hand, and Plaintiff and the Class Members, on the other.

69.     Defendant breached the implied warranty of merchantability because the Recalled Massagers are not fit for their ordinary purpose therapeutic massaging. After all, Defendant did not indicate that the Recalled Massagers would contain a hazardous defect and create a burn or fire hazard when charging.

70.     Given that Plaintiff and Class Members are unable to safely use the Recalled Massagers without risk of burns or fire hazards, the Recalled Massagers are not fit for their particular purpose of safe massaging.

71.     Defendant's warranty expressly applies to the purchaser of the Recalled Massagers, creating privity between Defendant and Plaintiff and Class Members.

72.     Privity, although created, is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and sales. Defendant's warranty was designed for, and intended to, benefit the consumer only, including Plaintiff and Class Members.

73.     Defendant had sufficient notice of its breaches of implied warranties associated with the Recalled Massagers. Defendant was put on actual notice of its breach through consumer complaints. In addition, Defendant's own Recall demonstrates actual notice.

74.     Had Plaintiff, Class Members, and the consuming public known that the Recalled Massagers could possibly overheat, they would not have purchased the Recalled Massagers.

75.     As a direct and proximate result of the foregoing, Plaintiff and the Classes suffered and continue to suffer damages and injuries, and are entitled to recover all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

76.    Plaintiff suffered injury because she purchased a worthless massager. For all intents and purposes, Plaintiff's massager is now a notoriously unsafe massager with a reputation for overheating.

77.    Plaintiff also suffered economic loss due to Defendant's Recall, resulting in a diminished value of the massager relative to its original purchase price.

78.    Plaintiff has suffered damages in that Plaintiff has been inconvenienced by Defendant's Recall and accompanying refund or replacement. Plaintiff neither anticipated nor paid for a massager incapable of charging without overheating.

79.    Defendant's breach of its implied warranty of merchantability is the proximate cause of Plaintiff and the Classes' injuries.

80.    Plaintiff and the member of the Classes seek actual damages, attorney's fees, costs, and any other just and proper relief available under the laws.

## COUNT III
## VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT (15 U.S.C. § 2301 ET SEQ.)
### (On Behalf of Plaintiff and the Classes)

81.    Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

82.    Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ET SEQ ("MMWA").

83.    Defendant is a "supplier" and "warrantor" with the meaning of the MMWA.

84.    The Recalled Massagers are "consumer products" within the meaning of the MMWA.

85.    15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer damaged by a warrantor's failure to comply with a written or implied warranty.

86.    Defendant's express warranties are written warranties within the meaning of the MMWA.

87.    Defendant breached its warranties by offering for sale and selling the Class Massagers, which were by design and construction defective and unsafe due to the Defect.

88.    Defendant's actions subjected Plaintiff and the Class to danger; those actions also caused monetary damages because the Recalled Massagers are inherently worth less than they would have been without the Defect, and have not been offered a cash refund.

89.    Additionally, Plaintiff and the Class Members suffered damages in that they have been greatly inconvenienced by this Recall.

90.    Defendant has breached and continues to breach its written and implied warranties of safety and reliability, thereby damaging Plaintiff and the Classes, when the massagers fail to perform due to the Defect.

91.    Due to these breaches, Plaintiff and the Classes have suffered damages.

92.    Plaintiff and the Classes seek full compensatory, punitive, and consequential damages as allowed by law, and any other relief to which Plaintiff and the Classes may be entitled.

**COUNT IV**
**NEGLIGENT DESIGN DEFECT**
**(On Behalf of Plaintiff and the Classes)**

93.    Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

94.    Defendant owed Plaintiff and the Classes a duty to reasonably and safely design, manufacture, market, and sell the Recalled Massagers.

95.    Defendant breached this duty by defectively designing and manufacturing the Recalled Massagers, thus rendering the massagers neither fit, nor suitable for their intended purposes.

96.    Any utility of the Massagers is heavily outweighed by the unreasonably dangerous defect that comes with using the Massagers. Even a working Massager offers no value due to the risk of burn or fire hazard, the Massagers. The safety concerns are too great.

97.    Defendant's defective design caused monetary damages to Plaintiff and the Classes because the Recalled Massagers now are worth less than they were before the Defect became known, given the notoriety of the Defect.

98.    In addition to the monetary damages, Plaintiff and the Classes have also been injured due to the additional time and effort needed to acquire a refund for the defective Massager, and have also been damaged by being limited to apply the refund only to other HoMedics products

99.    Defendant did not exercise due care in the production of the Recalled Massagers. Defendant's design created a dangerous massager prone to overheating, while many other massagers of similar quality, including other models sold by Defendant, do not have this Defect.

100.    The Massagers were defective at the time they left the hands of the Defendant. The Defect caused burn and fire risk just by using at intended and while being in the same condition at it was when it was manufactured.

101.    Plaintiff and the Classes seek actual damages, attorney's fees, costs, and any other just and proper relief available thereunder for Defendants' negligent design and manufacturing of the Massagers.

**<u>COUNT V</u>**
**STRICT LIABILITY- MANUFACTURING DEFECT**
**(On Behalf of Plaintiff and the Classes)**

102.     Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

103.    At all times relevant to this litigation, Defendant engaged in the business of researching, testing, developing, manufacturing, marketing, selling, distributing, and promoting their HoMedics Massagers, which are defective and unreasonably dangerous to consumers,

including Plaintiff, because of manufacturing defects, which consumers, including Plaintiff did not expect.

104.    Upon information and belief, the Massagers were defective and unreasonably dangerous because they failed to charge without overheating. This Defect was present at the time the Massagers left the control of Defendant.

105.    Plaintiff and Class Members could not reasonably have discovered the Defect, including the manufacturing defect, and risks associated with overheating before or at the time of her purchase. Plaintiff and Class Members relied upon the skill, superior knowledge, and judgment of Defendant.

106.    Defendant is liable to Plaintiff and Class Members for injuries caused as a result of its manufacturing defects.

107.    The defects in Defendant's Massagers were substantial and contributing factors in causing Plaintiff's and Class Members' damages, and, but for Defendant's misconduct and omissions and the massagers' defects, including but not limited to its manufacturing defects, Plaintiff and Class Members would not have sustained the losses that have been sustained to date, and would not have been exposed to the risk and dangers associated with the massagers.

108.    As a direct and proximate result of Defendant's misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages from the purchase of worthless, unsafe massagers.

109.    Plaintiff and the Classes seek actual damages, attorney's fees, costs, and any other just and proper relief available thereunder for Defendants' negligent design and manufacturing of the Massagers.

**COUNT VI**
**STRICT LIABILITY- DEFECTIVE DESIGN**
**(On Behalf of Plaintiff and the Classes)**

110.    Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

111.    Defendant is the designer, manufacturer, seller, distributor, marketer, and supplier of the Massager which was defectively designed and unreasonably dangerous for its intended use by foreseeable consumers such as Plaintiff.

112.    The Massager was unreasonably dangerous in design due to the massager's propensity to overheat. Such enabled, during the normal, directed use of the massager, for it to overheat when plugged in to charge.

113.    The aforementioned design defects rendered Defendant's product unsafe and unfit for its intended use.

114.    Defendant's product was in this defective and dangerous condition at the time it left Defendant's possession.

115.    Defendant failed to act reasonably in choosing a design of the subject massager that wouldn't overheat.

116.    Defendant could and should have used a safer alternative design to prevent the Massagers from overheating and therefore potentially burning its users or causing fires.

117.    A reasonable consumer, including Plaintiff, would not have reason to expect that the Massager was prone to overheating, would not be able to detect any such defect, and would not have any knowledge as to how to prevent such an incident from occurring.

118.    The Massager was expected to reach and did reach the intended consumers, including Plaintiff, without substantial change in the condition in which it was sold.

119.    Plaintiff did not misuse or materially alter the Massager and is unaware as to how she could have avoided the incident.

120.    The subject massager was defective at the time of its design, and such defects and risks of harm outweighed the utilities and/or benefits of its design.

121.    At the time it was sold, Defendant knew or should have known that their Massagers possessed defects that pose a serious safety risk to Plaintiff and the public.

122.    As a direct and proximate result of the design defects contained within the Massager, Plaintiff suffered and continues to suffer injuries and damages, for which the Defendant in this case is liable.

123.    Plaintiff and the Class members seek actual damages, attorney's fees, costs, and any other just and proper relief available thereunder for Defendants' Massager design defect.

**COUNT VII**
**STRICT LIABILTY- FAILURE TO WARN**
**(On Behalf of Plaintiff and the Classes)**

124.    Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

125.    At all relevant times, Defendant was engaged in the business of manufacturing, marketing, testing, promoting, selling and/or distributing HoMedics Massagers in the regular course of business.

126.    At all relevant times, including the time of sale and consumption, Defendant failed to include adequate and proper warnings and/or instructions regarding the defects in its massagers and risk of injury associated with regular and foreseeable use of the massagers.

127.    Defendant had a duty to exercise reasonable care in the advertising and sale of the massagers, including a duty to warn and instruct Plaintiff and Class Members of the dangers associated with use of the massagers that were known or should have been known to Defendant at the time of sale of the massagers to Plaintiff and Class Members.

128.    Defendant knew or should have known Plaintiff and Class Members could foreseeably suffer injury as a result of Defendant's failure to exercise ordinary care in providing adequate warnings as described herein.

129.    Plaintiff and Class members had no reasonable basis to think after buying Defendant's Massager that the Massagers could pose a burn and fire hazard.

130.    Defendant breached its duty to Plaintiff and Class Members by failing to exercise due care under the circumstances.

131.    The massagers were not reasonably safe for their intended uses and were defective as described herein as a matter of law due to their lack of appropriate and necessary warnings. Specifically, Defendant negligently failed to provide sufficient or adequate warnings to Plaintiff and Class Members regarding the hazards associated with the massagers.

132.    Defendant, by excising reasonable diligence, could have made such warnings available to Plaintiff and Class Members.

133.    As a direct and proximate result of Defendant's failure to provide Plaintiff and Class Members with sufficient or adequate warnings, Plaintiff and Class Members were not adequately informed of the potential dangers and/or defects of the massagers.

134.    Had Plaintiff and Class Members been adequately warned of the unreasonable dangers and risks of the massagers, Plaintiff and Class Members would not have purchased or used the Massagers.

135.    As a direct and proximate result of Defendant's conduct, including actions, omissions and misrepresentations, Plaintiff and Class Members suffered and will continue to suffer actual damages from the purchase of worthless, unsafe massagers.

136.     Plaintiff and the Class members seek actual damages, attorney's fees, costs, and any other just and proper relief available thereunder for Defendants' failure to warn Plaintiff and the Class of the Massager's dangerous condition.

**COUNT VIII**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Classes)**

137.     Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

138.     Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's worthless Recalled Massagers.

139.     Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class Members.

140.     Because Defendant obtained this benefit unlawfully—namely, by selling and accepting compensation for the Recalled Massagers with a propensity to overheat—it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

141.     Moreover, the circumstances as described further herein are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

142.     Defendant manufactured, marketed, and sold the Recalled Massagers under the guise of these Massagers being safe and operable. Instead, Defendant sold Massagers with an overheating defect that created a dangerous fire hazards and burn risks.

143.     Because it would be unjust and inequitable for Defendant to retain the non-gratuitous benefits conferred on it by Plaintiff and members of the Classes, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

144. Plaintiff and the Class members seek actual damages, attorney's fees, costs, and any other just and proper relief available under the laws.

**COUNT IX**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class**es**)**

145. Plaintiff hereby incorporates all paragraphs above as if fully set forth herein.

146. Defendant caused Recalled Massagers to be sold, distributed, marketed, promoted, and/or used by Plaintiff and the Proposed Classes.

147. At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Recalled Massagers, including the duty to take all reasonable steps necessary to provide effective Massagers without risk of overheating.

148. Defendant breached this duty by producing Recalled Massagers with an overheating Defect. For some time, Defendant has produced other Massagers without this Defect; that in itself is evidence that Defendant did not exercise proper care in producing the Recalled Massagers. As further evidence of Defendant's lack of care, many other manufacturers produce massagers that do not overheat.

149. Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known, that providing a massager prone to overheating could cause or be associated with Plaintiff's and Class Members' injuries.

150. Defendant's alleged negligence included:

    a. Selling and/or distributing the Recalled Massagers that negligently overheated; and

    b. Systematically failing to provide consumers with massagers that did not overheat.

151. As a direct and proximate result of Defendant's negligence, Plaintiff and the Classes have suffered and will continue to suffer actual monetary damages in addition to the wasted time

required to return the Massagers in exchange for a refund credit that may only be used to purchase other HoMedics products.

152.    But for Defendant's negligent design, production, and marketing of Recalled Massagers, Plaintiff and the Classes would not be injured as they would not have purchased the worthless Recalled Massagers.

153.    Plaintiff's and Class Members' injuries were foreseeable, because at the time of purchase of Defendant's Product, Defendant had received complaints from consumers regarding overheating and burns in the Recalled Massagers.

154.    Further, it is foreseeable that a massager with an overheating defect would be worthless as it would be a dangerous massager to use.

155.    Due to Defendant's breach, Plaintiff and the Classes were harmed in that they now own a useless massager with a dangerous Defect given Defendant's confounding lack of due care in designing and producing the Massagers.

156.    Plaintiff and the Class Members seek actual damages, attorney's fees, costs, and any other just and proper relief available.

## PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, on behalf of herself and members of the Classes, requests that the Court enter judgment in their favor and against Defendant, awarding as follows:

A.    Certifying the Classes as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

B.    Declaring that Defendant is financially responsible for notifying the members; of the Proposed Classes of the pendency of this action;

C.    Awarding all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D.  Instituting an injunction requiring that Defendant engage in a corrective notice campaign;

E.  Scheduling a trial by jury in this action;

F.  Awarding pre- and post-judgment interest on any amounts awarded, as permitted by law;

G.  Awarding costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

H.  Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated:  January 16, 2204

Respectfully Submitted,

*/s/   Paul Doolittle*

Paul J. Doolittle
Blake G. Abbott
**POULIN | WILLEY |
ANASTOPOULO, LLC**
32 Ann Street  Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
Email: paul.doolittle@poulinwilley.com
          blake.abbott@poulinwilley.com